## Case No. 377.

### ANDREWS et al. v. HYDE et al.

[3 Cliff. 516.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1872.[2]

Mortgages—What Constitutes—Equity—Evidence—Pleading.

1. Repeated decisions of the federal courts have established the rule that oral evidence is admissible for the purpose of showing that a deed absolute on its face, was intended as a mortgage, and that the defeasance was omitted from mutual confidence between the parties.

[See Amory v. Lawrence, Case No. 336; Howland v. Blake, Id. 6,792; Cadman v. Peter, 12 Fed. 363; Peugh v. Davis, 96 U. S. 332; Dow v. Chamberlin, Case No. 4,037; Bentley v. Phelps, Id. 1,331.]

2. The evidence to prove the agreement ought to be clear and satisfactory, as the rule is one of exceptional character in the law of evidence.

[See Cadman v. Peter, 12 Fed. 363.]

3. Where the evidence to prove the agreement, was that of only one of the parties, the other having deceased, and was uncorroborated by any word or act of the other. proof of friendly relations existing between the parties is not sufficient where the evidence is otherwise subject to doubt.

4. Where witnesses are not excluded on account of interest in the event of the suit, the rule still applies that their veracity or impartiality may be affected by such interest.

[See The Boston and Cargo, Case No. 1,-673; The Helen R. Cooper and The R. L. Mabey, Id. 6,334.]

5. Something is due in such a case as this, to the denials of the answer to the effect that the conveyances were not made as security for any indebtedness.

6. Where the allegation of the bill is that certain real estate was conveyed to a deceased person as security for a debt, the complainant is not entitled to a decree upon the uncorroborated testimony of a single witness, and certainly not unless his statements are positive, and he appears to be without prejudice, bias. or interest adverse to the respondent.

[See Clark v. Van Riemsdyk, 9 Cranch, (13 U. S.) 153.]

In equity. The complainants were the assignees in bankruptcy of the estate of Horatio Woodman, and the respondents were the heirs at law and administrators of the estate of John A. Andrews, late of Boston, deceased. Briefly stated, the cause of action, as alleged, was as follows: That Woodman on the 17th of September, 1860, borrowed of John A. Andrews the sum of $6,000, for which

[1][Reported by William Henry Clifford. Esq., and here reprinted by permission.]

[2][Reversing an unreported decree of the district court.]

he gave his notes, and as for security for the debt and notes he conveyed or caused to be conveyed to him by two deeds dated respectively September 17, 1860, and October 8, in the same year, certain real estate situated in the counties of Shelby and Franklin in the state of Iowa, as more fully described in the said deeds. Said deeds, as the complainants alleged, were executed as security for said indebtedness, and that the grantee agreed to hold the lands only as security as aforesaid, and that he would reconvey said real estate to said Woodman when he should pay the amount of the loan and interest. Based upon these allegations, the prayer of the bill was that the complainants might be permitted to redeem the said lands, and for an account. The principal deed in question was the one first described, which was acknowledged on the day of its date, and was recorded on the 26th of the same month in the proper registry of the county where the land is situated. It acknowledged the receipt of three thousand dollars, which the grantor told one of the witnesses was the full value of the land. When conveyed, the land was wild land, neither party occupying it. Service was made, and the respondents appeared, and filed an answer in which they denied that the land was conveyed as a security, and averred that the conveyance was absolute and not as security. Testimony was taken, and the district court entered a decree for the complainants, from which decree the respondents appealed to this court. [Decree reversed, and bill dismissed, with costs.]

Woodman testified that the deeds were never in the possession of the grantee, that they remained in his possession until the appointment of his assignees in bankruptcy, that the deeds were made as security for present and future loans, that at the date of the first deed he was owing the grantee $3,540.91, and that at the time of his death, October, 1867, he owed him $7,000.

H. W. Paine and C. M. Ellis, for appellants.

H. D. Hyde, for appellees.

CLIFFORD, Circuit Justice. The testimony was full to the point that the deeds were given as security, and, if so, the complainants must be permitted to redeem, and they are entitled to an account as prayed in the bill, as repeated decisions of the federal courts have established the rule that oral evidence is admissible for the purpose of showing that a deed absolute on its face was intended as a mortgage, and that the defeasance was omitted from mutual confidence between the parties. Wyman v. Babcock, [Case No. 18,113;] Babcock v. Wyman, 19 How. [60 U. S.] 299; Russell v. Southard, 12 How. [53 U. S.] 139. Argument to support that rule of law is unnecessary, as it is well settled by authority; but the evidence

to prove the agreement ought to be clear and satisfactory, as the rule is one of an exceptional character in the law of evidence. Unquestionably the issue in this case depends entirely upon the credit to be given to the party who made the conveyances, in a case where he is not corroborated by any act or word done or spoken by the other party.

Attempt is made to show that he is corroborated by certain circumstances in the case, but the circumstances relied upon are too remote or too slight, in the judgment of the court, to have any substantial weight in that regard. They are as follows: 1. That friendly relations had existed between the parties for many years; but it is difficult to see how that fact tends to show that it was agreed between them that a deed absolute on its face should be held merely as a security for money loaned, and that the grantor might redeem the same at any future period of time during his natural life. Woodman admits that he was buying and selling land-warrants and lands during that period, and it is not unreasonable to suppose that he would be as ready and willing to sell to a friend as to a stranger, especially as it appears that the lands in question cost him only about one dollar per acre. Having purchased the land cheaply, it is quite as probable that he might be willing to give his friend a good bargain for prompt payment, as that his friend should agree to allow him an indefinite and unlimited right of redemption in the lands. 2. That the grantee paid the taxes. The only evidence of that fact is found in his own testimony, and if credit is not given to the witness, the fact is not established. Payment of the taxes, if made by the grantor, could have easily been proved, but the fact, if established, would not amount to much, as persons holding Western lands frequently employ agents to pay their taxes. 3. That the grantee retained the possession of the original deeds. The fact as shown in evidence is, that the grantee did not have the deed first described. On the contrary, it was sent to the registry of deeds, where it remained for a long time. True, he states in his deposition that the deeds were returned to him as soon as they were recorded, and that they were retained by him, and remained in his possession until the appointment of his assignees, but it appears from the deposition of Augustine Jones, that Woodman, in August, 1870, told him that the deeds were in the office of the registry of deeds in Iowa, and that he would send for them, and that at a subsequent time, when the witness called for the deeds, he told him that they had not arrived. Superadded to that, is the letter of Woodman to that witness, dated September 8, 1870, in which he states that he has received "the original deed from me to Governor Andrew of the Shelby county land, which I enclose to you with two cancelled agreements" there-

in described, showing that the pretence that he had the deeds in his possession all the time, is unfounded. Such a pretence is invoked, as showing that the deeds were under his control as the real owner of the property, but the pretence being disproved, it tends to discredit the witness, instead of confirming his testimony. Had he retained the deeds, as the pretence is in his testimony, something doubtless might be inferred from that circumstance in support of the theory of the complainants, but he having set up that theory in his examination, in chief, and the pretence being disproved, it must be assumed that the circumstance tends to discredit the grantor as a witness, especially as it is not shown by any other witness that he ever claimed any interest in the land during the lifetime of the grantee, or that the grantee ever in any way recognized the pretence that he had any interest in the lands.

Nothing certainly can be inferred in support of the theory of the complainants from the character of the supposed transaction, as the story is quite improbable on its face. It is that the grantor executed an absolute deed of lands, put it on record without the knowledge of the grantee, and kept it a secret from him for the period of three years, without anything to show that the deed was not what it purported to be, both of the parties having experience as conveyancers, and being well aware of the necessity of a defeasance of some kind, and that the same condition of things was continued four years longer, after the grantee was informed of the conveyance, without any step being taken by either party to supply the omission. Such men, whether friends or not, would not be likely to leave their rights in such uncertainty. Much strength is added to that view from the fact that the grantor from September, 1866, to March 20, 1867, was not indebted to the grantee at all, and yet, as the theory of the complainants is, the title was allowed to stand in the name of the grantee as a security for indebtedness, when nothing was due to the party holding the absolute estate. Debtors are frequently negligent in procuring a renewal of an expiring defeasance in cases where they have been in fault in not making the stipulated payments to their creditor, but when the whole incumbrance is paid, they are much less likely to remain quiet without some written assurance that their rights will be respected.

Administration on the estate of the grantee was first granted to William Rogers, and it appears that the grantor in those deeds was one of the appraisers. Jones was the other, and he testifies that Woodman never, in any of their consultations, stated that his notes to the intestate were in any way secured, and it does not appear that he made any such disclosure when, at a subsequent period, he was appointed administrator de bonis of the same estate. In his deposition he states that when these deeds were executed, he was indebted to the grantee in the sum before mentioned, which was secured by the conveyances, but Jones says that in their conferences as appraisers, he never mentioned that the notes were secured, that he did say, at another time, that the deeds were given to secure the sum of $7,000, and that it was agreed at the time the deeds were made, that they should be security for that sum. Contradictory statements are certainly calculated to impair the credit of a witness, and it is clear that the statement that such an agreement was made at the time the deeds were made, is utterly inconsistent with his testimony given in the case, that the grantee did not have any knowledge of the deeds for three years after they were made and forwarded to be recorded. His statements also to Jones are inconsistent with each other, as at another time he told him that the land conveyed was worth just about $3,000, which was the amount borrowed of the grantee, and that after 1860 he never owed the grantee less than that amount, which cannot be true, if he is to be believed, as he testifies that he owed him nothing from September, 1866, to March 20, 1867, as before explained. He is also contradicted in other particulars. He told Jones he paid the interest regularly, that he took no receipts, and that the notes with the indorsements of interest were all destroyed. Interest was not paid as there stated, as conclusively appears from the letter of the grantee, dated December, 1862, to the grantor, which is an exhibit in the case. When cross-examined in respect to those exhibits, Woodman admitted that they showed that he did not pay interest from December 1, 1862, to March, 1867, a period of more than four years. Important parts of the relation he gives of his dealings with the grantee, are materially erroneous, if not wilfully false. He claims that his exhibit of those matters is taken from his notebook, and that the statement shows the true state of his indebtedness, but the administrator produces a large number of notes and checks to the amount of $1,300, to which the witness does not allude in his account, which goes very far to show that no reliance can be placed in his statements as their dealings, or the amount he owed the grantee when the deeds were given. Witnesses are no longer excluded on account of interest in the event of the suit, but the proof of interest affects the credit of the witness now, as well as before, the passage of the act not changing the rule in that regard, as it shows that the witness is not impartial, that he has a motive to color his statements or to suppress the truth or to state what is false.

Woodman is not impartial, though decreed to be a bankrupt before he testified; as he was a defaulter to a large amount to the estate of the deceased grantee, from which he could not obtain a discharge in the bankrupt court. No debt created by the fraud or embezzlement of the bankrupt, or by his de-

falcation as a public officer, or while acting in any fiduciary character, can be discharged by the bankrupt court in any case. 14 Stat. 533. As administrator of the estate, he is a defaulter to the amount of $6,759.39, for which he cannot be discharged under the bankrupt act, but if he can establish the theory that those deeds are mortgages, and compel the legal representatives to get the pay for the claim out of those lands, he will be relieved from that liability and embarrassment. Something also is due to the absolute denials of the answer, in which the respondents not only deny that the real estate was conveyed as a security for any indebtedness, but aver their belief that the deeds were made as absolute conveyances and not as a security. Administrators and heirs cannot be supposed, in such a case, to have personal knowledge upon the subject, but the decision of the supreme court warrants the conclusion that in such a case the complainant is not entitled to decree upon the uncorroborated testimony of a single witness, certainly not, unless his statements are positive and the witness appears to be without bias, prejudice, or interest adverse to the respondent. Carpenter v. Insurance Co., 4 How. [45 U. S.] 218. Grave doubts are entertained whether a decree in such a case ought ever to be made upon the uncorroborated testimony of the grantor, but it is not necessary to decide that point, as the court is clearly of opinion that such a decree ought not to be made where it appears that the witness is interested adversely to the respondent, is contradicted by another witness, and has himself given false and contradictory accounts of various matters material to the issue, and, especially, where it appears that the claim has been long delayed and was never made in the lifetime of the grantee. Claims of the kind are easily made, and unless full proof is required to sustain them, it is to be feared that the estates of dead men will afford much less comfort and support to their widows and minor children than the decedents supposed the estates would, while they were expending their strength in toil and industry to earn and save the property for that purpose. Decree reversed and bill dismissed with costs.